|  |  |
|---|---|
| STATE OF NEW MEXICO<br>COUNTY OF EDDY<br>FIFTH JUDICIAL DISTRICT | FILED<br>5th JUDICIAL DISTRICT COURT<br>Eddy County<br>3/26/2025 1:04 PM<br>MARTHA HUEREQUE<br>CLERK OF THE COURT<br>Martha Huereque |

GINA STYRING

    Plaintiff,

vs.   Case No. D-503-CV-2025-00295 _____

CITY OF CARLSBAD,   Case assigned to Riley, Lisa B.
WENDY AUSTIN, and
JESSIE RODRIGUEZ

    Defendants.

## COMPLAINT

Plaintiff Gina Styring ("Ms. Styring" or "Plaintiff") brings this Complaint for damages and in support states the following:

### OVERVIEW OF CASE

1. This case concerns an ongoing series of sex scandals at the Carlsbad Police Department that make Caligula-era imperial Rome look like *Saved by the Bell*, and which reveal a deep-seeded culture of sexism and corruption that protects the department's own over all else.

2. Within the last several months, the former Chief of Police for Carlsbad, Shane Skinner, resigned after it became known he was having sex with his secretary in his office at police headquarters.

3. Chief Skinner likely thought he could get away with such flagrant misbehavior as the police union president, Sergeant Christopher Caron with Carlsbad PD, had received only "slap on the wrist" suspensions after Caron was found having sexual relations with civilians while he was on duty.

4. This "boys will be boys" culture filtered down to lower-ranking officers at Carlsbad

1

PD, too. Former officer Omar Lopez was subject to an IA investigation in January 2025 after he made depraved, false claims to coworkers that he had sex with Plaintiff in the second floor bathroom at the police station. This is on top of similar fanciful boasts Lopez made last year while drunk at a house party.

5. Yet, with all this sexual miscreance, the only person terminated from this *de facto* brothel of a police department has been Plaintiff, Gina Styring, whose offense was that she was the person Officer Lopez falsely claimed to have had sex with in the bathroom. That is, Officer Lopez lied to his coworkers about having sex with Ms. Styring, yet it was *Ms. Styring* who was terminated, not Officer Lopez.

6. Ms. Styring also raised the ire of the powers-that-be at Carlsbad PD when she suggested improvements in the police dispatch system at a union meeting in December 2024.

7. For Ms. Styring's sin of not being a team player, and for the misfortune of being the target of Officer Lopez's perverted bragging, new Chief of Police Jessie Rodriguez terminated Plaintiff in February 2025, a decision later ratified in a self-serving and rambling memorandum from Carlsbad City Administrator, Wendy Austin.

8. In all of this, Officer Lopez was never terminated; Chief Skinner was never terminated; and Sergeant Caron was never terminated. Only Ms. Styring was terminated.

9. The Carlsbad PD had a chance to change its retrograde culture when new Chief Rodriguez took over. Yet it has sadly declined to make any change and instead doubled down on its old ways. This must end. Employees at the Carlsbad PD deserve better. The people of Carlsbad deserve better. Plaintiff deserves better.

**PARTIES, JURISDICTION, VENUE**

10. Plaintiff Gina Styring is a resident of Eddy County, New Mexico.

11. Defendant City of Carlsbad ("Carlsbad", "City," or "Defendant") is a municipality

2

in Eddy County, New Mexico. It is the supervising entity for the Carlsbad Police Department ("Carlsbad PD"). Carlsbad city hall is located at: 101 N Halagueno St, Carlsbad, NM 88220.

12. Defendant Jessie Rodriguez ("Rodriguez") is the Chief of Police for the Carlsbad Police Department. On information and belief, Rodriguez resides in Eddy County, NM. His business address is: 602 W Mermod St, Carlsbad, NM 88220. Rodriguez is being sued in his official and individual capacities.

13. Defendant Wendy Austin ("Austin") is the City Administrator for Carlsbad. On information and belief, Austin resides in Eddy County, NM. Her business address is: 101 N Halagueno St, Carlsbad, NM 88220. Austin is being sued in her official and individual capacities.

14. Subject matter jurisdiction is proper because, through this action, Plaintiff seeks to vindicate rights afforded her by New Mexico law.

15. Personal jurisdiction is proper because substantially all alleged misconduct occurred in New Mexico.

16. Venue is proper because the cause of action originated in Eddy County and because Plaintiff resides there.

**STATEMENT OF FACTS**

17. Plaintiff has at all relevant times been a member of a New Mexico union of police dispatchers, and she has worked with the Carlsbad PD as a dispatcher since around June of 2022.

18. At a meeting with fellow union members in early December 2024, Plaintiff raised concerns that her supervisor at Carlsbad PD would not respond quickly enough to certain information requests.

19. In raising these concerns about her supervisor, Plaintiff was speaking on a matter of public concern—that is, the safety of Carlsbad area residents who could be affected by slow responses to emergency calls.

3

20. Reporting such concerns was not part of Plaintiff's normal job duties.

21. In January 2025, the new Chief of the Carlsbad PD, Rodriguez, told employees including Plaintiff that criticism of supervisors would not be tolerated.

22. Plaintiff reasonably believed Rodriguez's comments were directed at her. That is, Plaintiff reasonably believed that her concerns regarding her supervisor got back to Rodriguez.

23. Over the next couple weeks, it became evident that Rodriguez and others within Carlsbad PD were targeting Plaintiff for expressing concerns about the supervisor, and they were targeting Plaintiff on account of Plaintiff's being a woman.

24. For example, Rodriguez and one of his minions initiated an internal affairs investigation into Plaintiff about whether she might have had sexual relations with a male Carlsbad PD officer, Omar Lopez.

25. This accusation arose when certain Carlsbad employees said they overheard Officer Lopez brag that he had sex with Plaintiff in the second floor bathroom at the police station.

26. Officer Lopez had repeated this rumor to another employee at a house party sometime in 2024. Yet, the rumor did not become worthy of investigation until it became in Rodriguez's interest to crack down on Plaintiff.

27. The accusation that Plaintiff had sex with Officer Lopez, much less in any bathroom, was (and is) false. To the extent Officer Lopez ever made these statements, Lopez was lying.

28. As part of the IA investigation, Rodriguez's minion asked Plaintiff and Officer Lopez if they had ever had sex. Plaintiff and Officer Lopez both answered truthfully, no.

29. That should have been the end of it, but like Javert in *Les Misérables*, Rodriguez and his minion kept at it, interviewing more than a dozen people about what they knew regarding Plaintiff's sex life and whether she might have had sex with Officer Lopez.

4

03/27/2025

EXHIBIT A

EXHIBIT A TO MOTION

30. These interviews turned up no new information, except that many employees reported (truthfully) that they did not believe Plaintiff and Officer Lopez ever had sex.

31. Apart from the initial employees who had reported Officer Lopez's braggadocious lies (lies which Officer Lopez had since retracted), the interviews turned up nothing suggesting that Plaintiff and Officer Lopez ever had sex.

32. Nonetheless, toward the end of January 2025, Carlsbad PD insisted Plaintiff and Officer Lopez take polygraph tests about their rumored relationship.

33. This was a bridge too far for Plaintiff as it was clear by this point that Rodriguez's real intent was to harass Plaintiff on account of her gender and on account of her raising concern about her supervisor back in December.

34. Carlsbad PD is not in the habit of administering polygraph examinations to its own employees about their sex lives. In fact, Rodriguez later stated he was only aware of a polygraph examination being administered to an employee once during his long tenure at Carlsbad PD.

35. It is time-consuming and expensive to conduct a polygraph examination, the reliability of which is questionable at best.

36. On information and belief, other than this incident, Carlsbad PD has never asked an employee to take a polygraph about his or her sex life.

37. Plaintiff refused to take the polygraph examination, as did Officer Lopez. Plaintiff refused because she felt it demeaning and harassing to be strapped to a machine and asked intimate questions by her coworkers.

38. Plaintiff also reasonably suspected that no matter how she performed on the test, Rodriguez and his minions would use the subjectivity of the test to make it seem like she failed, and they would use that as an excuse to terminate her. Hence, to Plaintiff, the polygraph examination was a lose-lose proposition.

5

39. On or around March 4, 2025, Rodriguez informed Plaintiff that he was recommending her termination. Rodriguez's stated reason was Plaintiff's refusal to take the polygraph examination about her sex life.

40. In reality, Plaintiff was terminated as punishment for reporting concerns regarding her supervisor.

41. Plaintiff was also terminated as a result of her gender. Indeed, a similarly situated man would not have been subjected to the sort of rumor, innuendo, and harassment that Plaintiff has been.

42. Moreover, Officer Lopez never took the polygraph test, yet Rodriguez did not terminate him.

43. Carlsbad PD has a history of its leaders and officers engaging in sexual misconduct in violation of policies and procedures.

44. Former Carlsbad Chief of Police, Shane Skinner, was known to have sex in his office at the police station with a secretary.

45. Sergeant Christopher Caron has been known to have sexual relations with civilians around town while on duty.

46. Yet, former Chief Skinner was not terminated, nor was he required to take a polygraph examination.

47. Sergeant Caron was not terminated, despite his on-duty forays, so his misconduct is and was known to Carlsbad PD leadership. Sergeant Caron was not asked to take a polygraph examination about his sex life.

48. Yet, it was Plaintiff, a female, whom Rodriguez and the City terminated.

49. After the Chief recommended termination on March 4, Plaintiff appealed the decision to City Administrator Austin and a panel of city bureaucrats.

50. At a hearing on March 13, 2025, Plaintiff explained why the "investigation" of her was improper, and why she was being terminated as retaliation and on account of her gender.

51. On or around March 17, 2025, in a written memorandum, Austin affirmed the determination of Chief Rodriguez to terminate Plaintiff.

52. The memorandum revealed no new evidence that Plaintiff ever had sex with Officer Lopez. Rather, it regurgitated Rodriguez's so-called findings and in conclusory fashion stated that Plaintiff had been treated fairly.

53. Laughably, the memorandum concluded: "All City of Carlsbad employees are held to high standards, and these standards are particularly important for the Carlsbad Police Department. The professional standards of conduct that are expected of Carlsbad Police Department employees is paramount to maintaining a culture of integrity, respect, and accountability within the ranks of the Department and for maintaining Public Trust and Effective Policing."

54. This ridiculous statement was in direct contradiction of how Plaintiff has been treated by Carlsbad PD over the last four months, and it is undermined by the culture of sexual degeneracy that permeates Carlsbad PD.

55. Plaintiff loved her job as a 911 dispatcher where she got to help Carlsbad area citizens. Defendants' actions have unlawfully deprived her of her chosen occupation. This has caused damages to Plaintiff in the form of lost and/or reduced earnings and mental anguish.

**COUNT I**

**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964,
AS AMENDED 42 U.S.C. §§ 2000e, ET SEQ.
(Against the City)**

56. Plaintiff incorporates all foregoing paragraphs as if fully stated here.

57. Plaintiff is a member of a protected class based on her gender.

58. Plaintiff was performing her job in a manner consistent with Defendant's legitimate expectations.

59. Defendant discriminated against Plaintiff by, among other things, harassing her based on her sex, subjecting her to a hostile work environment, and terminating her.

60. Defendant acted with a willful and wanton disregard for Plaintiff's rights.

61. Plaintiff's sex was a motivating factors in Defendant's harassment and termination of Plaintiff.

62. As a direct result of Defendant's actions, Plaintiff experienced damages including mental anguish and loss of income.

63. On or around February 10, 2025, Plaintiff dual-filed a charge of discrimination with the New Mexico Human Rights Bureau ("NMHRB") and the Equal Employment Opportunity Commission ("EEOC").

64. Plaintiff has exhausted her administrative remedies with the NMHRB and EEOC.

65. Defendant acted with evil intent or was reckless or callously indifferent to Plaintiff's federally protected rights, such that punitive damages are warranted.

## COUNT II

### VIOLATION OF THE NEW MEXICO HUMAN RIGHTS ACT NMSA 1978 § 28-1-7
### (Against the City)

66. Plaintiff incorporates all foregoing paragraphs as if fully stated here.

67. Plaintiff is a member of a protected class based on gender.

68. Plaintiff was performing her job in a manner consistent with Defendant's legitimate expectations.

69. Defendant discriminated against Plaintiff by, among other things, harassing her, subjecting her to a hostile work environment, and terminating her.

70. Defendant acted with a willful and wanton disregard for Plaintiff's rights.

71. Plaintiff's sex was a motivating factor in Defendant's mistreatment of Plaintiff.

72. As a direct result of Defendant's actions, Plaintiff experienced damages including mental anguish and loss of income.

73. On or around February 10, 2025, Plaintiff dual-filed a charge of discrimination with the NMHRB and the EEOC.

74. Plaintiff has exhausted her administrative remedies with the NMHRB and EEOC.

75. Defendant acted with evil intent or was reckless or callously indifferent to Plaintiff's protected state rights, such that punitive damages are warranted.

## COUNT III

## WHISTLEBLOWER PROTECTION ACT N. M. S. A. 1978, § 10-16C-1 ET SEQ.
### (Against the City)

76. Plaintiff incorporates all allegations in this complaint as if fully set forth in this paragraph.

77. Plaintiff is a "public employee" as that term is used in NMSA 1978, Section 10-16C-1.

78. Defendant is a "public employer" as that term is used in NMSA 1978, Section 10-16C-1.

79. Plaintiff has suffered adverse employment action in that, at a minimum, she has been subjected to a hostile work environment and terminated.

80. Defendant engaged in this retaliatory action against Plaintiff because Plaintiff "communicate[d] to the public employer or a third party information about an action or a failure to act that [she] believe[d] in good faith constitute[d] an unlawful or improper act." NMSA 1978, § 10-16C-3(a).

81. Defendant also engaged in retaliatory action against Plaintiff because Plaintiff "object[ed] to or refuse[d] to participate in an activity, policy or practice that constitutes an unlawful or improper act." NMSA 1978, § 10-16C-3(c).

82. Plaintiff is entitled to damages as well as reasonable attorney's fees and costs of suit. NMSA. 1978, § 10-16C-4.

9

COUNT IV

VIOLATION OF THE FOURTEENTH AMENDMENT EQUAL PROTECTION CLAUSE
42 U.S.C. § 1983
(Against Rodriguez and Austin)

83. Plaintiff incorporates all allegations in this complaint as if fully set forth in this paragraph.

84. The Equal Protection Clause of the Fourteenth Amendment is violated when public officials subject a person to adverse employment action because of their gender.

85. Plaintiff was sexually harassed, humiliated, subjected to a hostile work environment, and ultimately terminated by Rodriguez and Austin because of her gender.

86. Male officers with the Carlsbad PD who commit alleged sexual misconduct are not terminated as Plaintiff was.

87. Male officers with the Carlsbad PD who commit alleged sexual conduct are not forced to take polygraph tests as Plaintiff was.

88. The disparate treatment of Plaintiff was motivated by a desire to enforce impermissible gender stereotypes.

89. As a proximate result of Defendants' actions, Plaintiff suffered damages including emotional distress and loss of income.

90. Defendants acted with evil intent or were reckless or callously indifferent to Plaintiff's federally protected rights, such that punitive damages are warranted.

COUNT V

VIOLATION OF THE FOURTEENTH AMENDMENT EQUAL PROTECTION CLAUSE
42 U.S.C. § 1983
(Against the City)

91. Plaintiff incorporates all allegations in this complaint as if fully set forth in this paragraph.

92. Municipal liability can attach under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for decisions made by final policymakers.

10

93. City ordinances and Carlsbad PD procedures made Rodriguez and Austin the final policymakers in determining what conduct was prohibited by Carlsbad PD and the City's procedures.

94. The policy adopted by Rodriguez and Austin deprived Plaintiff of the equal protection of the law, in that it discriminated against her based on her gender.

95. The City's policies or customs deprived Plaintiff of the equal protection of the law, in that they discriminated against her based on her gender.

96. The City failed to adequately train and supervise City employees in matters related to workplace harassment and gender-based discrimination and was deliberately indifferent to the rights of people those employees would come into contact with.

97. Rodriguez and Austin ratified or approved the egregious conduct carried out by their subordinates.

98. As a proximate result of the Defendants' actions as final policymaker, Plaintiff suffered damages including emotional distress and loss of income.

99. Defendants acted with evil intent or were reckless or callously indifferent to Plaintiff's federally protected rights, such that punitive damages are warranted.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the Court to enter an order granting Plaintiff the following relief.

a. Enter a Judgment against Defendants finding that they are liable to Plaintiff;

b. Award compensatory damages for all of Plaintiff's claims;

c. Award punitive damages;

d. Award the costs and expenses of this case, including attorneys' fees where permitted;

e. Award pre-judgment and post-judgment interest;

g. Award all other further and general relief as the Court deems just and proper.

11

03/27/2025

EXHIBIT A

EXHIBIT A TO MOTION

**JURY DEMAND**

Plaintiff demands a jury on all issues so triable.

12

03/27/2025

EXHIBIT A

EXHIBIT A TO MOTION

Date:  March 26, 2025

        Respectfully submitted,

        **WGLA, LLP**


        By:_____*/s/ Curtis Waldo*_____
        Benjamin Gubernick (SBN 145006)
        Curtis Waldo (SBN 163604)
        WGLA, LLP
        ben@wglawllp.com
        curtis@wglawllp.com
        Telephone (346) 277-0287
        (346) 394-8056
        Fax: 346-341-0169
        717 Texas St. Suite 1200
        Houston, TX 77002