IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**GINA STYRING,**

**Plaintiff,**

vs.

                                                      **Cause No: 2:25-CV-00400 GJF/DLM**

**CITY OF CARLSBAD,**
**WENDY AUSTIN, and**
**JESSIE RODRIGUEZ,**

**Defendants.**

## RESPONSE TO DEFENDANT CITY OF CARLSBAD'S MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiff Gina Styring ("Plaintiff") files this Response to Defendant City of Carlsbad (the "City")'s Motion for Judgment on the Pleadings, and states as follows:

### I.  OVERVIEW OF RESPONSE

The relief sought by the City's Motion is remarkable. Based on thirteen pages of unauthenticated hearsay that the Motion claims to be a Collective Bargaining Agreement ("CBA") between the City and a police union, the City argues Plaintiff has always and forever waived all her federal and state statutory rights against the City, including antidiscrimination claims and whistleblower protection claims. The City makes this argument despite the lack of any language in the CBA that would constitute a "clear and unmistakable" waiver of statutory rights as required by U.S. Supreme Court precedent; despite the fact Plaintiff is not even a party to the purported CBA; and despite the fact that Plaintiff has abided by all exhaustion requirements required by state and federal law. Indeed, the City has failed to show Plaintiff is even bound by the CBA, and its Motion fails for this reason alone.

But even assuming Plaintiff is bound by the CBA, the City's Motion still fails because

1

Plaintiff abided by the very grievance procedure relied on by the City. The CBA's "grievance and arbitration procedure" has four steps. Mot. at Ex. B at Art. 12. Plaintiff met steps 1-3 by complaining to her union, to the police chief, and to the city administrator. Her complaints were ignored, and she was terminated. Under step 4, Plaintiff had the *right* to seek arbitration, though the arbitration clause was permissive, not mandatory. Mot. at Ex. B at Art. 12, Step 4 ("If the grievance is still unresolved, either Party *may*…request arbitration."). Plaintiff chose not to pursue arbitration and pursue remedies in court, which was her right. Nothing in the CBA including the arbitration provision contains any waiver of statutory rights, or any language about waiving a judicial forum, or any similar language.

Finally, the City's Motion is fatally defective because it is premised on the City's own affirmative defense, not Plaintiff's Complaint. Under binding precedent (*infra*), a Rule 12(c) Motion can only be based on an affirmative defense where a plaintiff's complaint sets forth the factual basis for that defense. But Plaintiff's Complaint does not seek relief under any collective bargaining agreement; the Complaint does not even mention the collective bargaining agreement. The City's Motion should be denied on this basis alone. To the extent the Court converts the City's Motion into a Rule 56 motion (which Plaintiff opposes), the City's evidence including the CBA should be stricken as inadmissible. At a minimum, Plaintiff should be afforded the chance to seek discovery on what is the collective bargaining agreement and to whom it applies.

For these reasons and those below, the City's Motion should be denied.

## II.     RELEVANT BACKGROUND

### A. Plaintiff is run out of the Carlsbad Police Department for reporting mismanagement and due to sexism.

Plaintiff's claims are set forth in detail in her Complaint. In sum, Plaintiff dared to voice concern about how unresponsive one of her managers was to time-sensitive inquiries (Plaintiff is,

or was, a police dispatcher). Chief Rodriguez viewed Plaintiff's actions as disloyal, prompting him to order an "investigation" of Plaintiff based on various tawdry and false rumors concerning Plaintiff's purported affair with a police officer. The "investigation" turned up no evidence this relationship ever happened, yet Rodriguez and others within the City were undeterred and insisted Plaintiff take a humiliating polygraph exam. By this point, Plaintiff knew her days in the department were likely numbered, so she declined to go forward with the sexist and demeaning polygraph test, which in the Chief's warped logic provided him with the basis he needed to recommend Plaintiff be fired.

Plaintiff appealed the Chief's recommendation to the City administrators, and on March 13, 2025, there was an hour-long hearing presided over by Defendant Wendy Austin. Mot. at Ex. D. The Chief and his captain attended the hearing and summarized their perfunctory "investigation" and the hearsay rumors they had collected about Plaintiff's sex life. *Id.* Plaintiff appeared and explained why these rumors were false. *Id.* Attorneys for Plaintiff and the City were present and could ask questions. *Id.* Also present was a union representative, who did not seem to care that Plaintiff was being railroaded and who took the City's side. *Id.* On March 17, 2025, Austin issued a two-page opinion rejecting Plaintiff's appeal, adopting the Chief's recommendation, and discharging Plaintiff. *Id.*

In the meantime, Plaintiff had filed complaints with the EEOC and New Mexico Human Rights Bureau ("NMHRB") regarding the City's misconduct. On or around March 18, 2025, the NMHRB issued a right-to-sue letter, and on March 26, 2025, Plaintiff filed a lawsuit against the City, Austin, and Rodriguez. Dkt. #1-1. Plaintiff's complaint alleged statutory claims under federal and state law, including Title VII, the New Mexico Human Rights Act, and the Whistleblower Protection Act. Plaintiff did not allege any contract claims. She did not allege any

claims arising from a collective bargaining agreement. She did not attach, incorporate, or reference any collective bargaining agreement.

Defendants removed the case to federal court and filed an answer. As their Fifth Affirmative Defense, Defendants stated that Plaintiff's claims should be dismissed, or are waived, due to Plaintiff's failure to follow a grievance procedure set forth in a "Collective Bargaining Agreement." Dkt. #3. The Answer purported to attach the "Collective Bargaining Agreement" as Exhibit A, though PACER does not show any attachment to the Answer, and the Answer itself at Docket Entry No. 3 does not contain any Collective Bargaining Agreement as an attachment.

**B. In its Motion, the City relies on a thirteen-page document it calls the "Collective Bargaining Agreement" as grounds to dismiss all of Plaintiff's statutory claims.**

On June 2, 2025, the City filed the current Motion, arguing Plaintiff had not exhausted her remedies under a purported collective bargaining agreement, parts of which it attached to its Motion as Exhibit B. The City claims Exhibit B is the agreement referred to in its Answer (Mot. at 2), but this cannot be known given Defendants did not attach any document to their Answer. *See* Dkt. #3. The 13-page Exhibit B has the following characteristics:

- It purports to be between "The City of Carlsbad" and the "Carlsbad Police Officers Association." Plaintiff has never been a "Carlsbad Police Officer," and there is no evidence that dispatchers are represented by the "Carlsbad Police Officers Association."

- Section 1 of the CBA provides that the "CITY" recognizes the "UNION" as the "sole and exclusive collective bargaining representative for the Employees employed by the City in the Police Department as shown in Appendix A." Mot. at Ex. B, Art. 1. While there may have at one time been an Appendix A (which may have provided some clarity about who is covered), the City did not include Appendix A as part of its Exhibit B. Indeed, the CBA itself seems to be at least a 71-page document (not counting the missing appendix), yet the City only included pages 2, 43-51, and 71 in Exhibit B. Again, it is left to one's imagination what the omitted 60 pages and Appendix A might include.

- The CBA is unauthenticated; there is no affidavit to make the CBA admissible as a business record; indeed, there is no affidavit or declaration from anyone at the City

about what this document is. The CBA contains highlighting on certain paragraphs, though it is unknown who made the highlighting or when the highlighting was applied.

- The CBA refers throughout to the "CITY" and the "UNION," but there are no definitions in Exhibit B, so one is left to assume the "CITY" refers to Carlsbad, and the "UNION" refers to the Carlsbad Police Officers Association. It is left to one's imagination whether "UNION" includes people like Plaintiff, who was a dispatcher and not an officer. It is left to one's imagination whether "UNION" includes police department employees such as Plaintiff, or only the union itself. A reasonable reading of the term "UNION" is that it refers to the *union itself*, not employees, but again, it is not clear, and the City does not attach the definitions to its Motion.

- The CBA purports to apply from April 1, 2022, to April 1, 2025, though the agreement itself is undated. The CBA is signed by 11 people, none of whom is Plaintiff, and none of whom are Defendants Rodriguez or Austin.

- Page 46 of the CBA states that an employee who is terminated by the City Administrator "may" challenge the decision with the "governing body." "Governing Body" is capitalized at places in Exhibit B and not capitalized in other places. The pages the City included do not contain a definition provided for "governing body.".

- Article 12, titled "Grievance and Arbitration Procedure," provides that "any grievance or dispute which may arise between the Parties" should be resolved in four steps. "Parties" is undefined, so it is not clear whether this process applies to "Employees" who are part of the "UNION" or whether it applies only to the "UNION" itself. Given the signatories are the City and the Carlsbad Police Officer Association, "Parties" likely means only these two signatories, not third parties such as Plaintiff.

- The first three steps of the grievance procedure outline a process by which an aggrieved employee raises a grievance first with the union, second with and the police chief, and third with the "City Administrator" (here, Wendy Austin).

- If after the first three steps the grievance remains unresolved, step four provides that "either Party *may*…request Arbitration." (Emphasis added). Again, "Arbitration" is capitalized, suggesting there may be a definition out there somewhere. Regardless, there is no evidence arbitration is mandatory—to the contrary, the right to pursue arbitration is expressly voluntary. Indeed, there is no requirement that any party request arbitration. There is no language anywhere in Exhibit B by which an employee waives her rights to bring statutory claims in federal or state court, or waives any claims at all.

On the basis of this fragmented, unauthenticated hearsay that it calls the CBA, the City asks that the Court dismiss Plaintiff's statutory claims against it under Title VII, the New Mexico Human Rights Act, and under the Whistleblower Protection Act.

5

### III.   ARGUMENT

**A. The City may not rely on its affirmative defense as a basis for a motion for judgment on the pleadings.**

A court considering a motion for judgment on the pleadings should "accept all facts pleaded by the non-moving party as true and grant all reasonable inferences from the pleadings in favor of the same." *Mata v. Anderson*, 760 F. Supp. 2d 1068, 1083 (D.N.M. 2009); *see also id.* ("The court must view the facts presented in the pleadings and draw the inferences therefrom in the light most favorable to the nonmoving party….All of the nonmoving parties' allegations are deemed to be true, and all of the movants' contrary assertions are taken to be false."). In this way, a Rule 12(c) motion tests the sufficiency of a plaintiff's pleadings and is limited to those pleadings; it does not test the validity of a defendant's affirmative defenses. As the Tenth Circuit explained in *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018), dismissing a claim on the pleadings based on an affirmative defense is proper "only when the complaint itself admits all the elements of the affirmative defense by alleging the factual basis for those elements."[1]

Here, Plaintiff's Complaint does not allege a claim under the CBA or even mention the CBA. *See* Dkt. #1-1. Thus, the City's Motion runs straight into the concrete wall of *Fernandez* and similar precedent. At best, the City's Motion should be treated as one for summary judgment. But even then, a motion for summary judgment cannot rely on an unauthenticated, inadmissible document like the purported CBA that forms the basis of the Motion. *See infra* Part II.B.

The City cites a district court case from North Carolina[2] for the proposition that a Rule 12(c)

---

[1] *See also Xechem, Inc. v. Bristol–Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004) ("Only when the plaintiff pleads itself out of court—that is, admits all the ingredients of an impenetrable defense—may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6)."); *Miller v. Shell Oil Co.*, 345 F.2d 891, 893 (10th Cir. 1965) ("If the defense appears plainly on the face of the complaint itself, the motion [to dismiss for failure to state a claim] may be disposed of under [Rule 12(b)].").

[2] Plaintiff does not know why the City is relying on North Carolina precedent. Perhaps this one

motion may be permitted where a document is referenced in the answer, but this case undermines the City's argument.³ *U.S. v. Valentine*, 751 F. Supp. 3d 617, 622–23 (E.D.N.C. 2024) explains that a motion for judgment on the pleadings "tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or ***the applicability of defenses***." *Id.* (emphasis added). *Valentine* explains further: "In the limited circumstances where the allegations of the complaint give rise to an affirmative defense, the defense may be raised under Rule 12(b)(6) [or Rule 12(c)], but ***only if it clearly appears on the face of the complaint***." *Id.* (citing *Richmond, Fredericksburg & Potomac R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)) (emphasis added). As a result, motions for judgment on the pleadings "***generally cannot reach the merits of an affirmative defense***." *Id.* (citing *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007)) (emphasis added). Repeating the rule from *Fernandez*, the court noted that while it may consider some extrinsic evidence, that evidence must be "central to one of the claims [in the complaint] and [its] authenticity [must be] undisputed." *Id.* (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)). In *Valentine*, the court denied defendant's motion for judgment on the pleadings, noting that while its affirmative defense may have merit, a Rule 12(c) motion was not the proper vehicle to move on an affirmative defense. *Id.* at 624-25 ("This affirmative defense may have merit…But resolution of the defense requires a predicate factual showing that does not clearly appear on the face of the amended complaint, so Defendants' argument is premature.").⁴

---

out-of-context quotation is all the City could find in the entire country to support its argument.

³ The City cites *Valentine* for the proposition that "[T]he court 'may consider documents incorporated by reference in the [answer].'" But this paraphrasing is misleading. The original quote *Valentine* is quoting reads, "In determining a motion for judgment on the pleadings, the court may consider documents incorporated by reference ***in the pleadings***." *Parks v. Alteon, Inc.*, 161 F. Supp. 2d 645, 649 (M.D.N.C. 2001) (emphasis added). "Answer" was added in brackets by the *Valentine* court, presumably because it was discussing the limited instances where an answer might be applicable to a motion for judgment on the pleadings. That is, where the answer relies on a document central to the original complaint.

⁴ New Mexico and Tenth Circuit precedent is similar. In considering a Rule 12(c) motion, a court

Even if the City could rely on its "CBA" affirmative defense for a Rule 12(c) motion (which it cannot), the City's Answer did not actually attach what it now claims to be the CBA, meaning both Plaintiff and this Court are in the dark about what the City's Answer was referencing. Moreover, for extrinsic evidence to be considered on a Rule 12(c) motion, neither party may object to the authentication of the subject evidence. *E.g.*, *Gallup*, 240 F. Supp. 3d at 1199. But Plaintiff does object to the authenticity of Exhibit B. As shown above and below, the purported CBA the City attached to its Motion is at best incomplete and seems to be missing key definitions and attachments. It is anyone's guess whether Exhibit B is what the City intended to reference in its Answer. It is not clear where Exhibit B comes from or who wrote it. It contains unexplained highlighting. It is incomplete as it is missing an Appendix and missing at least 60 pages of text, much of which seems relevant. The City has presumably included the parts of the CBA it deems helpful to its argument, but that leaves Plaintiff and the Court unable to test the City's highly questionable proclamation that Exhibit B precludes Plaintiff from redeeming rights afforded to her under the laws of the United States and New Mexico.

For these reasons, the City's Motion should be denied.

**B. To the extent the Court treats the City's Motion as a Rule 56 Motion, it should also be denied. At a minimum, Plaintiff should be afforded more discovery.**

Federal Rule of Procedure 12(c) provides that, "[i]f, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion

---

"may consider documents to which the complaint refers if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Gallup Med Flight, LLC v. Builders Tr. of New Mexico*, 240 F. Supp. 3d 1161, 1199 (D.N.M. 2017) (citing *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941–42 (10th Cir. 2002)). "If…a complaint does not reference or attach a document, but the complaint refers to the document and the document is central to the plaintiff's claim, the defendant may submit an 'indisputably authentic copy to the court to be considered on a motion to dismiss.'" *Id.* (citing and quoting *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997)).

shall be treated as one for summary judgment and disposed of as provided in Rule 56...." Plaintiff respectfully submits the Court should consider and deny the City's Motion under Rule 12(c), but to the extent the Court considers the Motion to be one for summary judgment, it must also be denied.

Evidence supporting a motion for summary judgment must be admissible. *E.g.*, *Brown v. Perez*, 835 F.3d 1223, 1232 (10th Cir. 2016). Exhibit B is not admissible. It is an outside writing whose declarant is unknown, with no business records affidavit, and no other hearsay exception that would apply. By its own terms, Exhibit B does not purport to be written by or agreed to by Plaintiff, so it is not a statement by a party opponent. Indeed, it is not clear who wrote Exhibit B. On these bases, Plaintiff objects to consideration of Exhibit B and respectfully requests the Court exclude it from consideration. Without Exhibit B, there is no summary judgment evidence to support the City's waiver argument, so the City's motion should be denied.

At a minimum, there is a need for discovery about the purported CBA under Rule 56(d)—to find out what the whole document actually says, to discover its scope, including whether Plaintiff is bound by its terms, and to discover if or why the City contends Plaintiff waived her rights. All this discovery is in the possession of the City, not Plaintiff.[5] As described by the attached Waldo Declaration, such discovery is needed but not currently available. At a minimum, Plaintiff is entitled to more discovery on the CBA before the CBA may be invoked to foreclose Plaintiff's statutory rights.

C. **Plaintiff is not bound by the purported CBA.**

As described above, the CBA purports to be between the "CITY" and the "UNION."

---

[5] The City also did not produce the CBA with its Initial Disclosures on June 5, 2025, though it did reference the CBA as a document it may use to support its defenses. Under Rule 37(c)(1), if a party fails to provide information under Rule 26(a), it is "not allowed to use that information...to supply evidence on a motion...." On this basis, the City is barred from relying on Exhibit B.

"UNION" may refer to the "Carlsbad Police Officers Association" referenced on the first page of Exhibit B (it is not clear). But Plaintiff's Complaint refers to her as being a member of a "New Mexico police dispatchers union." Dkt. #1-1 at ¶17. Plaintiff does not allege herself to be a member of the Carlsbad Police Officers Association. Plaintiff has never been a "police officer" at all. She is a dispatcher. As described above, "UNION" is undefined, and the Appendix is missing. Moreover, the grievance procedure relied on by the City binds the "Parties." But Plaintiff is not a "Party" to the purported CBA; the "UNION" is. Plaintiff is not a signatory to the CBA. The CBA appears to distinguish between "Parties" and "Employees," with the grievance procedure applying to the former but not the latter. That strongly suggests the grievance procedure is meant to bind only the "Parties"—the CITY and the UNION—not "Employees."[6]

For these reasons, even if the Court considers Exhibit B, the City has not shown that this purported CBA or the grievance procedure therein bind Plaintiff in any way. On this independent basis, the City's Motion should be denied.

**D. The CBA contains no clear and unmistakable waiver of statutory rights by Plaintiff.**

Under Supreme Court precedent, in the context of a collective bargaining agreement, for an employee "to waive a statutory right the duty [to arbitrate] must be established ***clearly and unmistakably***." *Metro. Edison Co. v. N.L.R.B.*, 460 U.S. 693, 709 (1983). For example, in *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70 (1998), a union member subject to a collective bargaining agreement sought to bring a claim against his employer under the Americans with Disabilities Act. The collective bargaining agreement set forth a procedure for grievances to be submitted to a committee, and if there is no agreement from the committee about the proper resolution, the claim had to be referred to arbitration. *Id.* at 73. The arbitration provision stated:

> The Union agrees that this Agreement is intended to cover all matters

---
[6] It is not clear of course that Plaintiff is an "Employee," either.

> affecting wages, hours, and other terms and conditions of employment and that during the term of this Agreement the Employers will not be required to negotiate on any further matters affecting these or other subjects not specifically set forth in this Agreement….

*Id.* Citing this provision, the union member's employer argued the member had waived his ADA claim by agreeing to this arbitration clause. *Id.* at 75. In a unanimous ruling, citing *Edison*, the Supreme Court (Scalia, J.) held that this arbitration clause was not sufficiently "clear and unmistakable." *Id.* at 80. After all, the "arbitration clause [wa]s very general, providing for arbitration of '[m]atters under dispute,'…which could be understood to mean matters in dispute under the contract." *Id.* The Court acknowledged a general preference for enforcing arbitration provisions but noted an important distinction between an individual employee waiving his or her right to a judicial forum, compared to a union waiving the rights of its members on their behalf. *See id.* at 80-81. ("*Gilmer* involved an individual's waiver of his own rights, rather than a union's waiver of the rights of represented employees and hence the 'clear and unmistakable' standard was not applicable."). It makes sense, the Court reasoned, to have a higher threshold for the latter instance. *Id.*

Compare the arbitration provision in *Wright* to that at issue here. The provision here is even more general. It refers only to a "grievance or dispute between the Parties." There is no reference to statutory rights, let alone waiving statutory rights. Arbitration is permissive, not mandatory like in *Wright*. Similar to *Wright*, nothing in the grievance procedure here forecloses Plaintiff from using the federal and state courts to enforce her statutory rights.

The use of the word "intended" in section 5, page 51 of the grievance procedure is also telling and represents more of a wish or meta-commentary rather than an express waiver. If the Parties had truly intended for non-signatory police dispatchers such as Plaintiff to clearly and unmistakably waive all federal and state statutory claims, using this language—which does not

11

refer to Plaintiff, which does not refer to any employee, which does not refer to any statutory right, which does not refer to any waiver or release—would be a very odd way of going about it.

The bottom line is that, of the 13 pages of the CBA cherry-picked by the City, not one sentence references to any statutory waiver, let alone a "clear and unmistakable waiver." The City's Motion fails on this basis.

### E. Plaintiff followed the steps outlined by the purported CBA.

The City's Motion is based on the premise that Plaintiff did not follow the grievance procedure in the CBA, but even this is not right. Based on the facts alleged in the Complaint, Plaintiff did follow the grievance procedure. She complained to the Chief, who ordered that Plaintiff be investigated, and then the Chief recommended Plaintiff's termination. Mot. at Ex. C; Dkt. #1-1 at ¶49. Plaintiff appealed to the City Administrator (Austin), who affirmed Plaintiff's discharge. *Id.* at ¶¶49-55. The union representative was aware of all of this, and he/she attended the predetermination hearing. *See* Mot. at Ex. D. Put together, this comprises steps 1-3 of the grievance procedure. *See* Mot. at Ex. B, Art. 12. Plaintiff could have requested arbitration under step 4, but she chose not to, as did the City, a decision expressly permitted by step 4, which says each party "may" request arbitration.

Citing *Lucero v. Bd. of Regents of Univ. of New Mexico*, 2012-NMCA-055, the City argues an employee such as Plaintiff "must exhaust grievance procedures in an employee handbook or manual before filing claims against their employers" (Mot. at 6). But *Lucero* involved an employee's breach of contract claims, not Title VII or other statutory claims—it makes sense the employee in *Lucero* would have to follow the process in the contract to bring claims under that contract. Plaintiff who has no contract claims, let alone claims under the CBA. Moreover, the employee in *Lucero* declined to attend the fact-finding hearing about his grievance. *Lucero*, at

12

¶10.  That is the opposite of what happened here.

Similarly, the City cites *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652 (1965) and *Gebhart v. Raytheon Air-craft Co.*, 2004 WL 1212047, at *6 (D. Kan. May 25, 2004), for the proposition that an employee must exhaust grievance procedures (Mot. at 7), but, again, employees in *Republic Steel* and *Gebhart* brought claims **under their respective collective bargaining agreements**.  For statutory claims, the rule is "clear and unmistakable waiver."  *See supra*.

Another dissimilarity between *Gebhart* and the current case concerns the role of the union, and is another reason why the City's Motion fails.  A collective bargaining agreement is by definition an agreement between an employer and a union, which purports to represent employees.  In *Gebhart*, plaintiff did not allege the union failed to represent his interests.  *Gebhart*, 2004 WL 1212047, at *4.  Compare that to here, where a union representative attended the predetermination hearing presided over by Austin, and that representative "strongly advised Styring to participate in a polygraph."  Mot. at Ex. D.[7]  In other words, the union representative was complicit in the very misconduct perpetrated by Austin and Rodriguez, and certainly failed to adequately represent any rights Plaintiff had under the CBA.  Yet the City argues it is this same union's contract with the City that precludes Plaintiff from enforcing her statutory rights.  The union's inefficacy and complicity are only more reasons why it would have been futile for Plaintiff to continue pursuing her rights under the CBA.

### F. The statutes under which Plaintiff seeks relief do not require exhaustion of union grievance procedures.

Nothing in the text of Title VII provides that where collective bargaining remedies are available, an employee waives her statutory rights.  In fact, the Supreme Court has held opposite.

---

[7] Exhibit D to the Motion describes the union representative as a "CPOA" representative, but again, the City submits no evidence that this was the union of which Plaintiff was a member.

Under *Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974), an employee may pursue both collectively bargained-for remedies, and Title VII claims. *Id.* at 59-60 ("[F]ederal policy favoring arbitration of labor disputes and the federal policy against discriminatory employment practices can best be accommodated by permitting an employee to pursue fully both his remedy under the grievance-arbitration clause of a collective-bargaining agreement and his cause of action under title VII."). Similarly, there is no language in the New Mexico Whistleblower Protection Act or the New Mexico Human Rights act requiring exhaustion of union grievance procedures, and the City identifies none. Plaintiff filed complaints with the federal Equal Employment Opportunity Commission and New Mexico Human Rights Bureau and later received right sue letters. That is all the "exhaustion" the statutes require.

## IV.    CONCLUSION

For the above reasons, Plaintiff respectfully requests the Court deny the City's Motion for Judgment on the Pleadings. In the alternative, Plaintiff requests the Court convert the City's Motion into one under Rule 56 and deny it under that Rule. Plaintiff seeks all other relief to which she is entitled at law or in equity.

Date:  June 16, 2025

                                     Respectfully submitted,

                                     **WGLA, LLP**

                                     By: */s/ Curtis Waldo*
                                     Benjamin Gubernick (SBN 145006)
                                     Curtis Waldo (SBN 163604)
                                     WGLA, LLP
                                     ben@wglawllp.com
                                     curtis@wglawllp.com
                                     Telephone (346) 277-0287
                                     (346) 394-8056
                                     Fax: 346-341-0169
                                     717 Texas St. Suite 1200
                                     Houston, TX 77002

## **CERTIFICATE OF SERVICE**

     I hereby certify that on June 16, 2025, I filed the foregoing document with the Court on PACER, which provided a copy to Defendants' counsel.

                                     */s/ Curtis Waldo*
                                     Curtis Waldo