**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

GINA STYRING,

      Plaintiff,

v.                                                                    Civ. No. 25-400 GJF/DLM

CITY OF CARLSBAD,

      Defendant.

**MEMORANDUM OPINION AND ORDER ON**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**FOR FAILURE TO EXHAUST CONTRACTED FOR REMEDIES**

THIS MATTER is before the Court on Defendant City of Carlsbad's Opposed Motion and

Memorandum for Summary Judgment for Failure to Exhaust Contracted for Remedies (Dkt. No.

79) ("Motion"). The Motion is fully briefed. *See* Dkt. No. 90 (response); Dkt. No. 100 (reply). As

explained herein, Plaintiff did not fail to exhaust her remedies under the collective bargaining

agreement ("CBA") at issue, nor did the CBA include a "clear and unmistakable" waiver of her

right to a judicial forum for vindicating the statutory rights she asserts in this lawsuit. Thus, the

Court will **DENY** the Motion and permit Plaintiff's claims to proceed.

**I.    INTRODUCTION**

This case arises from the termination of Plaintiff's employment as a dispatcher with the

Carlsbad Police Department, which Plaintiff asserts was due to her gender and protected

statements she made at a union meeting. Dkt. No. 1-1. In the instant Motion, Defendant argues

that Plaintiff failed to "exhaust her contracted for remedies pursuant to the collective bargaining

agreement between the City and the Carlsbad Police Officers Association[, which] clearly and

unmistakably waived Plaintiff's right to file her statutory claims." Dkt. No. 79 at 2. Specifically,

Defendant contends that the CBA precludes Plaintiff's claims under (a) Title VII of the Civil

Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e17 ("Title VII"); (b) the New Mexico Human Rights Act, NMSA 1978 § 28-1-7 ("NMHRA"); and (c) the New Mexico Whistleblower Protection Act, NMSA 1978 §§ 10-16C-1–10-16C-6 ("NMWPA"). Dkt. No. 79 at 2.

## II.   FACTUAL BACKGROUND[1]

Beginning in June 2022, Plaintiff was employed as a dispatcher by the Carlsbad Police Department ("CPD"). Def.'s Mot. for Summ. J., Undisputed Material Fact (hereinafter "Def.'s UMF") ¶ 1, Dkt. No. 79 (citing Dkt. No. 79, Ex. 1, at 30:14–17). During that employment, Plaintiff became a member of the Carlsbad Police Officers Association ("CPOA" or "Union"). Def.'s UMF ¶ 2 (citing Dkt. No. 79, Ex. 1, at 32:2–13). The CPOA is the "sole and exclusive collective bargaining representative for the Employees employed by [CPD]," including, but not limited to, certified police officers and dispatchers. Def.'s UMF ¶ 3; Dkt. No. 100, Def.'s Reply to UMF ¶ 1 (citing Dkt. No. 100, Ex. 1, at A.4, A.63–65). At all times relevant to Plaintiff's claims, the CPOA had a collective bargaining agreement ("CBA") with the City of Carlsbad that governed rates of pay, hours of work, and other conditions of employment for Union members, including Plaintiff. Def.'s UMF ¶ 5; Dkt. No. 100, Def.'s Reply to UMF ¶ 5 (citing Dkt. No. 100, Ex. 1, at A.3).

In early 2025, CPD initiated an internal affairs investigation related to alleged misconduct between Plaintiff and Omar Lopez, a male CPD Officer. Def.'s UMF ¶ 6 (citing Dkt. No. 1-1 ¶ 24; Dkt. No. 79, Ex. 3). Following that investigation, the CPD Police Chief, Jessie Rodriguez, recommended that Plaintiff be immediately discharged, citing her refusal to take a polygraph examination during the investigation, which he claimed was a violation of policy, hindered the investigation, and suggested a lack of truthfulness on Plaintiff's part. Def's UMF ¶ 7; Dkt. No. 79, Ex. 3 at 1–2.

---

[1] The facts that follow are either affirmatively admitted or not "specifically controverted" with competent evidence by the non-moving party. *See* D.N.M. LR-Civ. 56.1.

Under the CBA's disciplinary procedure, a Union employee faced with a recommendation of termination from the Police Chief had the "opportunity to participate in a pre-determination hearing" after which the City Administrator had five working days to issue a written determination affirming, reversing, or modifying the Police Chief's recommendation. Dkt. No. 79, Ex. 2, at Art. 11, §2(F)–(I). In Plaintiff's case, she attended a March 13, 2025 pre-determination hearing before the City Administrator, Wendy Austin. Def.'s UMF ¶ 8 (citing Dkt. No. 79, Ex. 4). Following the hearing, Austin issued a memorandum affirming Chief Rodriguez's recommendation that Plaintiff be discharged. Def.'s UMF ¶ 9 (citing Dkt. No. 79, Ex. 4).

The CBA's disciplinary procedure further provided that "[a]ny Employee discharged upon the recommendation and determination of the City Administrator will, upon request of the discharged Employee and/or their designated union representative, be given the opportunity to appear before the [G]overning [B]ody . . . to appeal the decision of the City Administrator." Def.'s UMF ¶ 11 (Dkt. No. 79, Ex. 2, at Art. 11 § 2(L)). Thus, the CBA permitted Plaintiff to further appeal Austin's termination decision to the Governing Body. *Id*. The Governing Body, in turn, could "affirm, reverse, or modify the decision of the City Administrator." Def.'s UMF ¶ 12 (citing Dkt. No. 79, Ex. 2, at Art. 11, § 2(N)).

The CBA also conferred certain rights on the Union. For instance, in the event the City Administrator determined that a Union employee should be terminated, the disciplinary procedure gave the Union the "the right to take up the discharge . . . as a grievance at the third step of the grievance procedure" and to proceed through the grievance procedure if necessary, culminating in arbitration if elected either by the Union or the City. Def.'s UMF ¶ 14 (citing Dkt. No. 79, Ex. 2, at Art. 11, § 2(N)). The corresponding provision of the CBA's grievance procedure provided that "either Party may, within thirty (30) days after the reply of the City Administrator or their

representative is due, by written notice to the other, request Arbitration." Def.'s UMF ¶ 14 (citing Dkt. No. 79, Ex. 2, at Art. 12, § 1, Step 4). The grievance procedure identified one exception to the arbitration provision, specifying that a grievance could *not* be submitted to binding arbitration if the City's Governing Body previously made a final decision on the same dispute. Def.'s UMF ¶ 15 (citing Dkt. No. 79, Ex. 2, at Art. 12, § 1, Step 4). Finally, the grievance procedure provided that "Employees may appeal the decision of an arbitrator to District Court in accordance with State Statutes."[2] Dkt. No. 79, Ex. 2, at Art. 12, § 1, Step 4.

The CBA explained that the grievance procedure was "intended by the Parties as the *sole procedure* to be used in resolving *any grievance or dispute* between the Parties." Def.'s UMF ¶ 18 (citing Dkt. No. 79, Ex. 2, at Art. 12, § 5) (emphasis added). Moreover, the disciplinary procedure provided that "[a]ny disciplinary actions or measures imposed upon an Employee may be processed as a grievance through the grievance procedure." Def.'s UMF ¶ 19 (citing Dkt. No. 79, Ex. 2, at Art. 11, § 1(D)) (emphasis added). Relatedly, pursuant to the grievance procedure, "[a]ny grievance or dispute which may arise between the Parties, including the application, meaning, or interpretation" of the CBA was to be settled in accordance with the grievance procedure. Def.'s UMF ¶ 20 (citing Dkt. No. 79, Ex. 2, at Art. 12, § 1). With respect to allegations of "inappropriate conduct" by the Police Chief, the grievance procedure specified that the Union could take such grievances or disputes directly to the City Administrator. Def.'s UMF ¶ 21 (citing Dkt. No. 79, Ex. 2, at Art. 12, § 6(B)). The grievance procedure defined "inappropriate conduct" to include "[a]ny action that is alleged to be in violation of any Federal, State, or City law or ordinance" as well as

---

[2] Despite the provision's reference to a "decision of the arbitrator," the parties appear to interpret the provision to permit appeal *of the Governing Body's decision* to a New Mexico state district court. *See* Def.'s UMF ¶ 13; Dkt. No. 90, Pl.'s Resp. to Def.'s UMF ¶ 13. The Court considers this interpretation at odds with the plain language of the grievance procedure; nevertheless, the meaning of this provision is not material to the Court's analysis.

"[a]ny act alleged to be retaliatory or discriminatory." Def.'s UMF ¶ 22 (citing Dkt. No. 79, Ex. 2, at Art. 12, § 6(C)(1),(5)).

Ultimately, Plaintiff did not appeal Austin's pre-determination decision to the City's Governing Body, nor did she pursue binding arbitration. Def.'s UMF ¶ 16; Dkt. No. 90, Pl's Resp. to UMF ¶ 16.  Rather, she elected to file suit against the City in state district court on March 26, 2025, asserting claims for violations of Title VII, the NMHRA, and the NMWPA premised on the allegedly discriminatory and retaliatory conduct of Chief Rodriguez, among others. Def.'s UMF ¶ 17; Dkt. No. 90, Pl's Resp. to Def.'s UMF ¶ 17; *see also* Dkt. No. 1-1.

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Jones v. Kodak Med. Assistance Plan*, 169 F.3d 1287, 1290 (10th Cir. 1999). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. at 248.

Initially, the moving party bears the burden of showing that no genuine issue of material fact exists. *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). Once the moving party meets its burden, the nonmoving party must show that genuine issues remain for trial. *Id.* The nonmoving party must go beyond the pleadings and must designate specific facts derived from admissible evidence (affidavits, depositions, answers to interrogatories, or admissions) demonstrating a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

5

In deciding a motion for summary judgment, the court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party. *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995). If there is no genuine issue of material fact in dispute, then the court must determine whether the movant is entitled to judgment in its favor as a matter of law. *See Jenkins v. Wood*, 81 F.3d 998, 990 (10th Cir. 1996); *Celotex Corp.*, 477 U.S. at 322.

## IV. PARTIES' PRIMARY ARGUMENTS

Defendant contends that Plaintiff failed to exhaust administrative remedies regarding her termination from CPD prior to filing suit in this case. Dkt. No. 79 at 6–7. In Defendant's view, the CBA gave Plaintiff three options: (1) appeal the City Administrator's decision to affirm her discharge to the City's Governing Body; (2) proceed to arbitration; or (3) abandon her claims related to her termination. *Id.* Because Plaintiff *invoked* the administrative process by participating in the pre-determination hearing before the City Administrator, Defendant insists that she failed to exhaust her remedies when she opted not to proceed through additional steps outlined in the CBA's grievance procedure. *Id.* at 7. Even if the Court disagrees that Plaintiff did not fail to exhaust her CBA remedies, Defendant insists that the CBA nevertheless waived the statutory rights she asserts here through a "clear and unmistakable" waiver. *Id.* at 7–10. In support, Defendant points to various provisions of the CBA's disciplinary and grievance procedures. *Id.* at 9; Dkt. No. 100 at 3–4.

For her part, Plaintiff asserts that Defendant has not identified mandatory language in the CBA under which she waived her right to pursue the claims she asserts here. Dkt. No. 90 at 1. Even so, Plaintiff insists that she participated in the CBA's grievance process in good faith but was "railroaded." *Id.* at 2. She submits that turning to the courts to challenge her termination is an

available course of action because none of the provisions of the CBA on which Defendant relies contain a "clear and unmistakable" waiver of her right to pursue statutory employment claims in a judicial forum. *Id*. at 7–8.

## V.  ANALYSIS

The issue before the Court is a narrow one: whether Plaintiff's failure to pursue arbitration or to appeal her termination to the City's Governing Body forecloses her Title VII, NMHRA, and NMWPA claims. Finding no failure to exhaust remedies under the CBA and no "clear and unmistakable" waiver of her right to pursue her statutory claims in a judicial forum, the Court concludes that Plaintiff's claims may proceed.

Neither the application of the CBA nor of its provisions are in dispute. The parties agree that Plaintiff was a member of the CPOA, and that, as a result, her rate of pay, hours of work, and other conditions of employment were governed by the Union's CBA with the City.[3] The parties further agree that when the Police Chief recommended Plaintiff's termination, the CBA gave Plaintiff the right to a pre-determination hearing before the City Administrator and an opportunity to appear before the Governing Body to appeal the City Administrator's termination decision. The parties also agree that the CBA set forth a grievance procedure governing "[a]ny grievance or dispute" that arose "between the Parties" to the CBA, which permitted the Union to present a grievance on Plaintiff's behalf to the City Administrator and, if the grievance remained unresolved, to make a request for binding arbitration, unless the Governing Body issued a final decision concerning the dispute. Finally, the parties agree that the CBA permitted the Union to take directly

---

[3] Defendant reads Plaintiff's response to assert that she was *not* a member of the CPOA and was *not* subject to the CBA. But the Court reads Plaintiff's response differently, not least because Plaintiff *admits* Defendant's undisputed material fact that she was a member of the CPOA. *See* Def.'s UMF ¶ 2; Dkt. No. 90, Pl.'s Resp. to Def.'s UMF ¶ 2. At most, Plaintiff suggests that, although a member of the Union, she was not a signatory or a "Party" to the CBA. *See* Dkt. No 90 at 2.

to the City Administrator any dispute that involved alleged conduct by the Police Chief that violated federal, state, or city law or that was retaliatory or discriminatory. The parties *disagree* as to what effect, if any, these and related CBA provisions have on Plaintiff's ability to pursue her statutory claims in this Court.

### A. Exhaustion of CBA Remedies

Although the CBA's disciplinary and grievance procedures were written permissively (e.g., an "Employee discharged [will] *be given the opportunity* to appear before the governing body" and "either Party *may . . .* request Arbitration"), Defendant insists that the provisions in effect were mandatory. Dkt. No. 79 at 6. As a result, Defendant contends that the CBA prevents Plaintiff, as a Union member, from pursuing her rights in court with respect to her termination without first proceeding through the steps outlined in the CBA's disciplinary and grievance procedures. *Id*. As Defendant puts it, because Plaintiff "invoked the administrative process by appealing the Chief's recommendation of discharge to the City Administrator," she was required to "continue and exhaust her administrative remedies before she could file her suit with the court." *Id*. at 7. Defendant insists that the relevant CBA provisions, when read together, required Plaintiff to "appeal, arbitrate or abandon [her] claims" against Defendant based on her termination. *Id*. Because Plaintiff elected not to appeal to the Governing Body or to request arbitration, Defendant insists that her Title VII, NMHRA, and NMWPA are subject to dismissal for failure to exhaust administrative remedies. *Id*. at 6–7.

In support, Defendant cites *Smith v. City of Santa Fe*, 171 P.3d 300 (N.M. 2007), *Lucero v. Board of Regents of University of New Mexico*, 278 P.3d 1043 (N.M. Ct. App. 2012), and *MEI Technologies, Inc. v. Detector Networks International, LLC*, No. CIV 09-0425 RB/LFG, 2009 WL 10665141 (D.N.M. July 6, 2009). But these cases offer precious little help, as none address an

employee's ability to vindicate statutory rights in a judicial forum in the face of an assertion that he or she failed to exhaust CBA remedies. As to that issue, the Court finds instructive the Tenth Circuit's analysis in *Harrison v. Eddy Potash, Inc.*, 112 F.3d 1437 (10th Cir. 1997), *vacated on other grounds by Eddy Potash, Inc., v. Harrison*, 524 U.S. 947 (1998).

In *Harrison*, the Tenth Circuit held that union employees need not first exhaust a CBA's grievance and arbitration provisions before pursuing Title VII claims in court. *Id*. at 1453. In so concluding, the Tenth Circuit observed that "in enacting Title VII, Congress . . . granted individual employees a nonwaivable public law right to equal employment opportunities that [is] separate and distinct from the rights created through the 'majoritarian processes' of collective bargaining." *Id*. at 1452. The court emphasized that "by submitting a grievance, a union employee 'seeks to vindicate his *contractual* right[s]' under the collective bargaining agreement, but does not assert his 'independent *statutory* rights accorded by Congress.'" *Id*. at 1454 (emphasis added) (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 49–50 (1974)).

Extending this rationale to the claims asserted here, the Court is satisfied that Plaintiff's participation in a pre-determination hearing before the City Administrator was, at most, her attempt to vindicate her *contractual* rights under the CBA's disciplinary provision. *See* Dkt. No. 79, Ex. 2, at Art. 11, §2(D) & (F); *see also Harrison*, 112 F.3d at 1454. This is not to say that Plaintiff's engagement with the CBA's disciplinary procedure asserted – much less waived – her separate and distinct *statutory* rights to be free from discrimination and retaliation. To the extent Defendant contends that Plaintiff must first exhaust the disciplinary and/or grievance procedures outlined in the CBA – whether by presenting an appeal to the Governing Body or by arbitrating her claims – before pursuing her Title VII, NMHRA, or NMWPA claims in this lawsuit, the Court disagrees. *See Harrison*, 112 F.3d at 1453; *see also Williams v. Shawnee F, LLC*, No. 25-2585-JAR, 2026

WL 83889, at *4 (D. Kan. Jan. 12, 2026) ("It is long-settled law in the Tenth Circuit that an employee's statutory rights under Title VII . . . to sue an employer are not dependent on first exhausting contractual grievance procedures" under a CBA.).

### B. "Clear and Unmistakable" Waiver of Judicial Forum

Defendant's Motion implicates the related issue of whether provisions of the CBA, most notably the arbitration provision found within the grievance procedure, operated to waive Plaintiff's right to pursue her statutory claims against Defendant in a judicial forum. In the cases discussed below, the United States Supreme Court and the New Mexico Supreme Court addressed waiver of judicial-forum rights via CBA, illuminating the path the Court travels here.

In *Wright v. Universal Maritime Service Corp*., 525 U.S. 70 (1998), the United States Supreme Court first articulated the standard applicable to an assertion that a CBA waives a judicial forum for statutory claims: the waiver of an employee's right to a judicial forum for statutory employment claims must be "clear and unmistakable." *Id*. at 80 (citations omitted). In setting out this stringent standard, the Court distinguished an employee's waiver of his or her own right to a judicial forum from a union's waiver on behalf of its members through a CBA, imposing a higher threshold for the latter. *Id*. at 80–81. The Court also emphasized that the right to a judicial forum "is of sufficient importance to be protected against less-than-explicit union waiver in a CBA." *Id*.

At issue in *Wright* was a "very general" CBA arbitration clause that provided for arbitration of "[m]atters under dispute." *Id*. at 80. The Court acknowledged that the CBA purported to govern "all matters affecting wages, hours, and other terms and conditions of employment" but concluded that, absent an explicit incorporation of statutory or anti-discrimination requirements, the arbitration clause covering "[m]atters in dispute . . . could be understood to mean matters in dispute *under the contract*." *Id*. (emphasis added). As the Court explained, the plaintiff's discrimination

10

claims there arose "not out of contract, but out of the [Americans with Disabilities Act], and [were] distinct from any right conferred by the [CBA]." *Id*. at 78–79. Although the CBA stated that "no provision or part of [the CBA] shall be violative of any Federal or State Law," that provision did not, in the Court's view, equate to "making compliance with the ADA a contractual commitment that would be subject to the arbitration clause." *Id*. at 81. Without an explicit incorporation of statutory anti-discrimination requirements, the Court found no "clear and unmistakable waiver of the covered employees' rights to a judicial forum for" ADA claims. *Id* at 82.  Thus, the Court permitted plaintiff to pursue his ADA claims in federal court. *Id*.

Eleven years later, the Supreme Court again applied its "clear and unmistakable" standard to an arbitration provision in a CBA, this time reaching a different result. In *14 Penn Plaza v. Pyett*, 556 U.S. 247 (2009), the Court considered a CBA that required union members to submit their employment discrimination claims to binding arbitration. *Id*. at 252. The relevant provision of the CBA specified that discrimination claims "including, but not limited to, claims made pursuant to Title VII . . . , the [ADA], the Age Discrimination in Employment Act . . . or any other similar laws, rules or regulations[] . . . shall be subject to the grievance and arbitration procedure . . . as the sole and exclusive remedy for violations." *Id*. The CBA further provided that "[a]rbitrators shall apply appropriate law in rendering decisions based upon claims of discrimination." *Id*. Observing that the arbitration provision expressly covered both contractual *and statutory* discrimination claims, the Supreme Court held that the CBA had "clearly and unmistakably" waived the plaintiffs' rights to a judicial forum for their ADEA claims, barring their lawsuit. *Id*. at 264.

More recently, the New Mexico Supreme Court considered whether arbitration provisions in a CBA waived the plaintiff's right to a judicial forum for claims asserted under the NMWPA.

Applying the same "clear and unmistakable" waiver standard articulated in *Wright*, the New Mexico Supreme Court in *Garcia v. New Mexico Human Services Department*, No. S-1-SC-39468, 2025 WL 1936666 (N.M. July 15, 2025), determined that for a CBA waiver to be enforceable as to statutory claims, it "must include a specific agreement to arbitrate any legislatively created statutory right the parties wish to be a part of the arbitration." *Id*. at *5. The court analyzed the grievance provision and the disciplinary provision of the CBA to determine whether either provision waived the plaintiff's right to a judicial forum for his NMWPA claims.

First, the court considered the CBA's grievance provision, which provided that "[a]llegations of violation, misapplication or misinterpretation of this [CBA] . . . shall be subject to th[e] negotiated grievance procedure," which mandated arbitration. *See id*. By requiring arbitration of claims alleging violations or misinterpretations *of the CBA*, the court determined that the provision "focused on contractual claims." *Id*. As to statutory claims, the court found no explicit language requiring arbitration of those claims in the CBA's grievance provision. *Id*. Moreover, because the grievance provision permitted grievances to be filed and arbitration requested by the union "*on behalf of* an individual aggrieved employee," the court emphasized that the CBA "ma[d]e clear that resolution of the grievance is directed by the [u]nion, not the employee." *Id*. at * 6. Accordingly, the court determined that "the plain meaning of the [grievance procedure did] not clearly and unmistakably waive [the plaintiff's] statutory right to bring his WPA claims in district court." *Id*.

Turning to the CBA's disciplinary provision, the court observed that it set out the "rights and responsibilities of the parties" in the event an employee sought to challenge a dismissal, demotion, or suspension. *Id*. at *7. In contrast to the grievance procedure, the court noted that the disciplinary provision permitted an employee to direct the proceedings *without union involvement*

12

and conferred on the employee the right to appeal and to determine whether the appeal would be decided by arbitration or by the state personnel board. *Id*. Despite the CBA's inclusion of a whistleblower protection provision that "restate[d] a portion of the nonnegotiable statutory protections" to which an employee is entitled under the NMWPA, the court again found no "clear or unmistakable" waiver in the disciplinary provision of the employee's right to litigate an NMWPA claim. *Id*. at *8 (citing *Gardner-Denver*, 415 U.S. at 79–50) (reasoning that the whistleblower protection provision and other provisions of the CBA were "devoid of language explicitly requiring an employee to submit violations of the WPA to arbitration or waiving his right to bring a lawsuit for those violations"). As such, the court determined that the plaintiff did not forfeit his separate statutory rights under the NMWPA by electing to pursue arbitration with respect to his demotion pursuant to the CBA's disciplinary provision. *Id*.

Given this body of precedent, Defendant concedes as it must that Plaintiff's claims under Title VII, the NMHRA, and the NMWPA are only foreclosed by the CBA if the CBA "clearly and unmistakably" waives Plaintiff's ability to vindicate those rights in court.[4] Dkt. No. 79 at 7 (citing *Jones v. Does 1-10*, 857 F.3d 508, 512 (3d Cir. 2017)). Defendant argues that three provisions of the CBA's grievance procedure together make up the relevant components of the CBA's "arbitration provision" for present purposes. Dkt. No. 79 at 9 (citing Def.'s UMF ¶¶ 18–20). Those provisions provide that (1) "[a]ny grievance or dispute which may arise between the Parties, including the application, meaning, or interpretation of this Agreement, shall be settled" according to the grievance procedure (Dkt. No. 79, Ex. 2, at Art. 12, § 1); (2) the CBA "and the grievance

---

[4] Defendant also notes that for an arbitration agreement to constitute an effective judicial-forum waiver, the relevant statutes must not waive arbitration as an appropriate forum. Dkt. No. 79 at 7. Defendant further insists – and neither the Court nor Plaintiff disagree – that claims under the statutes at issue here are generally arbitrable. *See id.* (citations omitted); *see also 14 Penn Plaza*, 556 U.S. at 256 n.5, 269–70; *Matthews v. Denver Newspaper Agency LLP*, 649 F.3d 1199, 1205 (10th Cir. 2011); *Darrington v. Milton Hershey Sch.*, 958 F.3d 188, 192–93 (3d Cir. 2020)).

procedure . . . [are] intended by the Parties as the sole procedure to be used in resolving any grievance or dispute between the Parties" (Dkt. No. 79, Ex. 2, at Art. 12, § 5); and (3) if the grievance remains unresolved after appeal to the City Administrator "either Party may . . . request Arbitration" (Dkt. No. 79, Ex. 2, at Art. 12, § 1, Step 4).

By their terms, the referenced provisions apply to "the Parties" to the CBA. Yet Plaintiff insists that she was neither a party nor a signatory to the CBA, and Defendant appears to agree. The City's corporate representative, Chief Rodriguez, conceded at his deposition that Plaintiff did not sign the CBA, that the term "Party" or Parties" was not defined in the CBA, and that "[a]s listed on the document," the parties to the CBA were the City and the Union. Dkt. No. 90 at 9 (citing Dkt. No. 90, Ex. A.1, at 174:16–181:15). The CBA's use of the phrase "*either* Party" in the arbitration clause further supports the notion that the "Parties" to the CBA were limited to the City and the Union. *See also* Dkt. No. 79, Ex. 2, at Art. 11, § 2(N) ("Subsequent to the decision of the City Administrator, the UNION shall have the right to take up the discharge . . . as a grievance . . . [to] be handled in accordance with the [grievance] procedure through the arbitration step if deemed necessary *by either the UNION or the CITY*." (emphasis added)). Giving the terms "Party" and "Parties" their plain meaning, and reading them in the context of the CBA as a whole, the only reasonable interpretation of the cited provisions is that they apply to the City and the Union, such that *either the City or the Union* could request arbitration to resolve disputes between themselves.

Defendant attempts to extend the grievance procedure's arbitration clause to Union "Employees," like Plaintiff, by relying on a separate provision in a different Article of the CBA. *See* Dkt. No. 79 at 9 (citing Def.'s UMF ¶ 19). That provision, found in the CBA's disciplinary procedure, provides that "disciplinary measures . . . imposed upon an Employee may be processed as a grievance through the grievance procedure." Dkt. No. 79, Ex. 2, at Art. 11, § 1(D). But this

14

non-mandatory reference to the grievance procedure – a separate provision with the stated purpose of settling disputes *between the City and the Union* – is hardly a "clear and unmistakable" waiver of Plaintiff's right to a judicial forum for vindication of her statutory rights. And permitting waiver "by operation of confusing, 'very general' arbitration clauses," would run afoul of the purpose of *Wright's* "clear and unmistakable" waiver standard. *Brent Elect. Co. v. Int'l Bhd. Elec. Workers Local Union No. 584*, 110 F.4th 1196, 1221 (10th Cir. 2024) (quoting *Abdullayeva v. Attending Homecare Servs., LLC*, 928 F.3d 218, 223 (2d Cir. 2019)). What's more, even if the disciplinary procedure itself included an arbitration clause that explicitly applied to Union members, which it does not, that provision would not constitute a "clear and unmistakable" waiver of Plaintiff's judicial forum absent an explicit requirement that Union employees submit their Title VII, NMHRA, and NMWPA claims to arbitration. *See Garcia*, 2025 WL 1936666, at *8; *Gardner-Denver*, 415 U.S. at 49–52.

As to the grievance procedure (in which the arbitration provision is embedded), Defendant fails to offer any meaningful distinctions between it and the language and scope of the grievance procedures in *Wright* and *Garcia*. To be sure, the grievance procedure's breadth is similar to that in *Wright*. *Compare* Dkt. No. 79, Ex. 2, at Art. 12, § 1 (covering "any grievance or dispute which may arise between the Parties"), *with Wright*, 525 U.S. at 80–81 (covering "matters under dispute" between the union and the employer). The language of the instant grievance procedure also shares strong similarities with the one at issue in *Garcia*. *Compare* Dkt. No. 79, Ex. 2, at Art. 12, § 1 (governing disputes including those as to "application, meaning, or interpretation" of the CBA), *with Garcia*, 2025 WL 1936666, *5 (covering "[a]llegations of violation, misapplication, or misinterpretation" of the CBA). And most notably, the grievance procedure here, like the one in *Garcia*, conferred the right to invoke arbitration *to the Union* to be exercised *on behalf of* an

15

aggrieved employee, rather than to individual employees to be exercised on their own behalf. *Compare* Dkt. No. 79, Ex. 2, at Art. 12, § 1, Step 4, *with Garcia*, 2025 WL 1936666, at *6. Ultimately, absent some reference to or incorporation of federal or state statutory remedies, the grievance procedure's arbitration provision is no closer to constituting a "clear and unmistakable" waiver of a judicial forum for vindicating statutory rights than those in *Wright* and *Garcia*.

Perhaps acknowledging as much, Defendant draws the Court's attention to yet another provision of the CBA: Article 12, Section 6. Defendant insists that "whether relying on the *Wright* case or the *Garcia v. N.M. Human Servs. Dep't*[] case cited by Plaintiff, the express language of [Article 12, Section 6] compels the conclusion that Plaintiff's claims are subject to resolution under the contracted for terms of the CBA." Dkt. No. 100 at 3–4. In pertinent part, this section of the CBA provides that "the Union may take up any grievance or dispute . . . with the City Administrator when the grievance or dispute alleges inappropriate conduct by the Police Chief" to include: (1) actions that are alleged to be in violation of federal, state, or city law; (2) alleged violations of the City's Sexual Harassment and Sexual Misconduct Policy; and (3) actions that are alleged to be retaliatory or discriminatory. *Id*. at 3 (citing Dkt. No. 79, Ex. 2, §6(C)(1), (3), (5)). Seizing upon references to violations of federal and state law, to sexual harassment, and to retaliatory or discriminatory conduct, Defendant suggests that, when read alongside Article 12, Section 6, the grievance procedure's arbitration provision constitutes a "clear and unmistakable" waiver of the statutory rights that Plaintiff asserts here.  Dkt. No. 79 at 9; Dkt. No. 11 at 3–4.  After all, Defendant contends, Plaintiff's claims are based on the alleged discriminatory and retaliatory actions taken by Police Chief Rodriguez during the Department's internal affairs investigation and when he recommended Plaintiff's termination. Dkt. No. 79 at 9 (citing Def.'s UMF ¶ 17).

16

In response, Plaintiff clarifies that her claims arise from allegedly discriminatory and retaliatory actions taken not only by Chief Rodriguez, but also by Adrian Rivera, Wendy Austin, and the City itself. Dkt. No. 90 at 3. In addition, she emphasizes that Article 12, Section 6 expressly applies *to the Union,* permitting *the Union* to take directly to the City Administrator grievances concerning the Police Chief's conduct. *Id*. at 8. In other words, Article 12, Section 6 does *not* bind Plaintiff or other Union "Employees" to a specific procedure for allegations of discriminatory or retaliatory conduct by the Police Chief.  Ultimately, Plaintiff insists that Article 12, Section 6's references to federal and state law and to discriminatory and retaliatory conduct are insufficient to satisfy the "clear and unmistakable" waiver standard.

Because Article 12, Section 6 fails to identify any specific statutes the CBA purports to incorporate into an arbitration clause applicable to Union employees, the Court agrees with Plaintiff. *See Brent Electric Co*., 110 F.4th at 1221 (citing *Ibarra v. United Parcel Serv.*, 695 F.3d 354, 357, 359–60 (5th Cir. 2012) for the proposition that a "clear and unmistakable" waiver of a "judicial forum for statutory discrimination claims . . . must, at the very least, identify the *specific statutes* the agreement purports to incorporate or include an arbitration clause that explicitly refers to statutory claims" (emphasis added)). In short, a CBA's general references to violations of state or federal law or to retaliatory or discriminatory conduct by the Police Chief are inadequate to constitute judicial-forum waiver. *See Matthews v. Denver Newspaper Agency LLP*, 649 F.3d 1199, 1202 (10th Cir. 2011) (holding that a non-discrimination provision within a CBA that prohibited discrimination on various bases "in accordance with and as required by applicable state and federal laws" was insufficient to waive an employee's right to a judicial forum for statutory discrimination claims). Importantly, in contrast to the CBA's arbitration provision in *14 Penn Plaza*, the CBA's arbitration provision here did *not* identify by name specific anti-discrimination statutes, nor did it

explicitly require union members, like Plaintiff, to arbitrate their statutory discrimination claims. Relatedly, the arbitration provision did not purport to give an arbitrator authority to resolve issues of a Union employee's statutory rights. *See* Dkt. No. 79, Ex. 2, at Art. 12, § 1, Step 4; *see also Matthews*, 649 F.3d at 1206 ("waiver may only occur where the arbitration agreement [in a CBA] expressly grants the arbitrator authority to decide statutory claims") (citing *14 Penn Plaza*, 556 U.S. at 262; *Wright*, 525 U.S. at 79–80). Each of the provisions of the CBA on which Defendant relies, including Article 12, Section 6, fall far short of the "clear and unmistakable" standard for forfeiting a judicial forum for statutory employment claims.

Defendant makes a final argument that, so far as the Court can tell, is not tied to any specific provision of the CBA. Defendant insists that because Plaintiff's NMWPA claims arose directly from her participation in Union activities, they necessarily fall within the CBA. Dkt. No. 100 at 4. Defendant goes on to suggest that, even if the Court determines that Plaintiff's discrimination claims fall outside the CBA, it should nevertheless determine that her whistleblowing and retaliation claims *are* subject to the CBA because they arose from comments she made at a Union meeting. *Id*. But critically, Defendant does not cite any authority for this proposition, nor does it present any compelling arguments as to why the Court should depart from the "clear and unmistakable" waiver standard for purposes of *statutory* retaliation and whistleblowing claims, even if they arise in the context of union activities. *See id*. In applying the "clear and unmistakable" waiver standard, courts have repeatedly emphasized the distinction between rights derived from statute and those conferred by CBA. *See, e.g., Wright*, 525 U.S. at 78–79; *Matthews*, 649 F.3d at 1206. Here, the CBA certainly implicated contractual rights: Plaintiff's right to appeal her termination to the Governing Body and the Union's right to grieve and arbitrate disputes with the City, including those related to Plaintiff's termination. But absent a "clear and unmistakable"

18

waiver, Plaintiff's separate and distinct right to avail herself of a judicial forum to pursue her statutory rights remains intact, the CBA notwithstanding.

## VI.  CONCLUSION

For the foregoing reasons, the Court concludes that Defendant has failed to demonstrate entitlement to summary judgment based either on Plaintiff's purported failure to exhaust remedies available in the CBA or on a "clear and unmistakable" waiver of her right to a judicial forum for the claims she asserts under Title VII, the NMHRA, or the NMWPA.

**IT IS THEREFORE ORDERED** that Defendant City of Carlsbad's Opposed Motion and Memorandum for Summary Judgment for Failure to Exhaust Contracted for Remedies (Dkt. No. 79) is **DENIED**.

**SO ORDERED.**

_____

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
*Presiding by Consent*